UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**FLORIDA EDUCATION
ASSOCIATION, et al.,**

**Plaintiffs,**

v.                                                            CASE NO.: 4-17-cv-414-RH/CAS

**STATE OF FLORIDA, DEPARTMENT
OF EDUCATION, et al.,**

**Defendants.**
_____/

**ORDER AND JUDGMENT GRANTING
FINAL APPROVAL OF SETTLEMENT**

**A.    Introduction**

The Joint Motion for Final Approval of Settlement (ECF # 409) of the Plaintiffs and the Florida Department of Education ("Department") is before the Court for decision. A fairness hearing was held on March 12, 2020. For the reasons that follow the motion is granted.

**B.    Background**

In this case, the Plaintiffs have challenged the testing requirement of the State of Florida Best and Brightest Teacher Scholarship Program alleging that it had an unlawful disparate impact on black and Hispanic classroom teachers in violation of Title VII of the federal Civil Rights Act of 1964 and the Florida Civil Rights Act of

1992. The Defendants have denied the allegations in all respects. The background of the case is more fully described in the Court's Order of Preliminary Approval. (ECF # 401.)

## C. The Requirements of Rule 23 Have Been Satisfied for Certification of the Settlement Classes

The parties' joint motion seeks final certification of the settlement classes preliminarily certified by the Court's Order of Preliminary Approval. For the reasons stated in that Order, the Court finds that all of the requirements of Rule 23 have been satisfied and finally certifies the following settlement classes:

> a. All Black classroom teachers employed by a School District or Florida charter school who had a "highly effective" rating pursuant to Fla. Stat. § 1012.34 as of the relevant application deadlines for each year the Program has been in effect (October 1, 2015, November 1, 2016, December 1, 2017, and January 7, 2019) (the "Program Years") and did not receive a scholarship payment under the Program in years 1 or 2; or did not receive a $6,000 scholarship payment in years 3 or 4;
>
> b. All Hispanic classroom teachers employed by a School District or Florida charter school who had a "highly effective" rating pursuant to Fla. Stat. § 1012.34 as of the relevant application deadlines for each year the Program has been in effect (October 1, 2015, November 1, 2016, December 1, 2017, and January 7, 2019) (the "Program Years") and did not receive a scholarship payment under the Program in years 1 or 2; or did not receive a $6,000 scholarship payment in years 3 or 4.

The Court further designates and confirms the Plaintiffs as the settlement class representatives and Plaintiffs' Counsel as class counsel.

## D. The Notice and Claims Process Satisfy Rule 23 and Due Process

The Order of Preliminary Approval found the notice plan and claims process proposed by the parties satisfied the requirement of Rule 23 and due process. Rule 23(e) provides that "notice of the proposed ... compromise shall be given to all members of the class in such manner as the court directs." The method and manner of the notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975). There is no single way in which the notice must be transmitted. Nonetheless, "notice by mail to all of the identified class members ... will suffice." *Federal Practice and Procedure* § 1797.6 at 200. Due process requires that class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The Court finds that the parties have fully complied with the Court's Order and that the notice given to class members fully satisfied the requirements of Rule 23 and due process. The declaration of the Class Administrator submitted by Plaintiffs' Counsel shows that more than 31,000 Notice and Claim forms were mailed by first class mail to class members and nearly 31,000 emails were sent informing class members of the settlement and directing them to the Class Administrator's website. More than 56,000 visits to the website were logged and as of filing of the Class Administrator's declaration 7880 telephone calls were fielded

by the Class Administrator. The FEA posted a notice of the settlement on its website and along with Plaintiffs' Counsel also fielded hundreds of calls from class members inquiring about the settlement. The Class Administrator further processed requests from individuals who did not receive a notice but believed they were class members. Only 148 of these individuals, or .4% of the number of class members to whom notices were mailed, were determined to be class members. These findings demonstrate that the notice process utilized by the parties was robust and effective.

The Class Administrator received more than 16,000 claims from class members, more than half of the classes. This claims-filing rate compares favorably with claims filing in consumer class actions, where, using a similar notice and claims process, claims filing rates average 10% of the class. *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, Federal Trade Commission, 2019, at page 11.

As provided in the Settlement Agreement and the Order of Preliminary Approval, the Class Administrator has also processed and determined challenges by class members to the number of Program years of eligibility based on information provided by class members. Class members have been notified of the Class Administrator's determination.

In sum, the Court finds that the notice and claims process satisfy the requirement of Rule 23 and due process.

4

## E. The Settlement Is Fair, Adequate and Reasonable

Rule 23(e) requires court approval of class action settlements. Under Rule 23(e), approval should be given so long as the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (internal quotation marks omitted). The Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Id*. (citations omitted). The Court may rely on the judgment of experienced class counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (1977) (citation omitted). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig*, 967 F.2d 489, 493 (11th Cir. 1992); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "In a Title VII case, as here, the policy favoring settlement is even stronger in view of the emphasis placed upon voluntary conciliation by the Act itself." *Cotton*, 559 F.2d 1331 (citation omitted). "[A] just result is often no more than an arbitrary point

5

between competing notions of reasonableness." *Bennett*, 737 F.2d at 987. "As a result, the question is not 'whether the proposed consent decree is the best possible deal,' but whether it is 'at a minimum, fair, adequate and reasonable.'" *Allen v. Alabama State Bd. Of Ed.*, 190 F.R.D. 602, 608 (M.D. Ala. 2000) (citation omitted).

The Court finds there is no evidence of collusion. The settlement is the product of arms-length negotiations by experienced counsel with the assistance of an experienced mediator after years of hard-fought litigation.

In the absence of collusion, *Bennett* identifies several factors as relevant to whether a class settlement's terms are fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id*. The Court further finds that on balance after consideration of all of the *Bennett* factors that the settlement is fair, adequate and reasonable and approval should be given.

### 1.   **The Likelihood of Success at Trial**

The Plaintiffs faced significant risks of not prevailing at trial and ultimately on appeal. The risks include, among others, whether the Department would ultimately be found to be an employer and liable under Title VII, whether there was unlawful adverse impact and whether the Department could prove the testing

requirement at issue was job related and consistent with business. The Department has given every indication that it would appeal any adverse ruling by this Court on any of these issues. This factor favors approval.

### 2. The Range of Possible Recovery

The "Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. American Express, Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 542 (S.D. Fla. 1988). The courts have typically measured the recovery in cases like this one by utilizing a shortfall or pro-rata analysis; that is, measuring the total recovery in which all class members share as if the selection rate of disfavored minority applicants for the benefit at issue were the same as the selection rate of white applicants. *United States v. City of Miami*, 195 F.3d 1292 (11th Cir. 1999). The Plaintiffs have estimated that the settlement represents nearly forty percent of the projected total recovery utilizing this method. *See In re Checking Account Overdraft Lit.*, 830 F.Supp.2d 1330, 1346 (S.D. Fla. 2011) (a recovery of between 9% and 45% was an "exemplary result"). The settlement was also contingent upon the 2019 Florida Legislature's eliminating the ACT/SAT test score requirement in the Program and not including a similar requirement in any successor or replacement

program, and such actions becoming law. That has occurred. The Court finds the recovery is well within the range of possible recovery and favors approval.

### 3. The Point On or Below the Range of Possible Recovery at Which a Settlement Is Fair, Adequate and Reasonable

As noted above, the recovery falls well within the range of possible recovery that is fair, adequate and reasonable. The Plaintiffs face significant risks of prevailing. This factor favors approval.

### 4. The Complexity, Expense and Duration of Litigation

The case presented numerous complex factual and legal issues, ranging from the FEA's standing, to the Department's liability as an indirect employer, to the complexities of disparate impact law, to detailed expert statistical analyses of voluminous data, and to the intricacies of expert testing validation analysis in the field of education. In addition to these issues, the case has been replete with numerous complex procedural and case management issues occasioned by the number of defendants in the case and the size of the classes. The case has already consumed nearly two and one-half years. The parties have expended thousands of attorney hours litigating the case and many hundreds of thousands of dollars of costs and expenses. It is likely that if the case were to proceed to trial any result would face almost certain appeal which would prolong the litigation for years to come. This factor favors approval.

### 5. The Substance and Amount of Opposition to the Settlement

The Court should examine the settlement in light of any objections and give them a reasoned response. *Cotton*, 559 F.2d at 1331. Conclusory "objections to the inadequacy of the settlement consideration and the allocation of the settlement proceeds … that fail[] to account for other pertinent considerations, including the plaintiffs' risk of losing at trial" are insufficient. *Nelson v. Mead Johnson & Johnson Co*. 484 F. App'x 429, 434 (11th Cir. 2012); *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1336-37 (S.D. Fla. 2011) (overruling objections without supporting evidence). A low number of objections suggests a settlement is reasonable. *Bennett*, 737 F.2d at 986; *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1336.

There have been three (3) objections to the settlement – Monique L. Desir, Teran Barr and Zoila Garcia. None of the objectors appeared at the final fairness hearing. Desir objects that the settlement is inadequate and believes each class member should be awarded at least half of the $6000-$8000 bonuses that were available under the Program and a maximum of 3% should be awarded for attorney's fees and costs. Barr objects that the settlement amount is inadequate and class members should receive not less than 15% of what teachers received under the Program, otherwise it would appear the Plaintiffs' attorneys benefited more than the plaintiffs. Garcia objects that the settlement amount is inadequate, specifically in relation to what was paid to teachers under the Program.

Each of these objections is denied. They are conclusory, lack evidentiary support, and fail to account for the "pertinent considerations" underlying the settlement, including the potential range of recovery and the risk that Plaintiffs would lose and get nothing.

The fact that there have been only three (3) objections to the settlement, none of which is substantial, suggests that class members believe that it is fair, adequate and reasonable. Coupled with this is the low number of class members (11) who have opted-out of the settlement, which further supports approval. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). In addition, the Department sent the CAFA notice about the settlement as required by 28 U.S.C. § 1715 to the United States Attorney General and the attorneys general of 18 states, including Florida where the vast majority of class members reside, none of whom objected or sought to intervene. Finally, the high claims filing rate –more than 50% - suggests the class members favorably view the settlement. *See Lee v. Ocwen Loan Servicing*, Case No. 14-CV-60649-GOODMAN, 2015 WL 5449813 *22 (S.D. Fla. Sept. 14, 2015) (collecting cases approving settlements with extremely low claims filing rates). This factor favors approval.

**6.     The Stage of Proceedings at which the Settlement Was Achieved**

The stage of the proceeding is considered because it "ensures 'counsel had an adequate appreciation of the merits of the case before negotiating.'" *In re Checking*

*Account Overdraft Litig.*, 830 F.Supp.2d at 1348-49 (S.D. Fla. 2011) (citation omitted). When the settlement was reached, discovery had closed and all the parties had filed motions for summary judgment on which the Court had ruled. The Court had ruled on class certification. Before the case was stayed pending the Department's appeal, it was scheduled for trial and the parties had begun preparing the pre-trial statement and related documents. This factor favors approval.

Based on consideration of all of the above factors, the Court finds that the settlement is fair, adequate and reasonable and should be approved.

**F.    The Proposed Service Payments Are Fair and Reasonable**

The Settlement Agreement provides for service payments in the amount of $10,000 to each of the seven individual Plaintiff class representatives. Service or "incentive" awards to class representatives "may be given 'to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, ... to recognize their willingness to act as a private attorney general.'" *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1219 (11thCir. 2018) (citation omitted) (approving service payment of $10,000 for named plaintiff representative). The Court finds that the service payments to the individual Plaintiffs are fair and reasonable and should be approved. Each has conferred substantial benefits on the class through the expenditure of significant time and effort responding to discovery, traveling from South Florida to

Tallahassee and preparing and sitting for depositions, participating in mediation and settlement discussions, and otherwise assisting class counsel in numerous ways in the prosecution of the case. Each also took a reputational risk in lending their name to and pursuing the litigation.

### G.   Plaintiffs' Counsel's Attorney's Fees Are Fair and Reasonable

The settlement agreement provides that Plaintiffs' Counsel's attorney's fees and costs, the service payment to the individual class representative Plaintiffs and the costs of settlement administration will be paid from an amount not to exceed 15% of total settlement fund. The class members were informed of this in the Notice. Plaintiffs' Counsel's motion and brief in support of an award in this amount was also posted on the class administrator's website as required by Rule 23(f). Plaintiffs' Counsel have submitted their own declarations as well as that of Loren Donnell in support of the fee award requested.

The Plaintiffs' Counsel's attorney's fees and costs are based upon the common fund approach which is routinely utilized and appropriate in class actions. *Muransky,* 905 F.3d at 1217. "[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* (quoting *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)). The benchmark for common fund recoveries is 25% of the fund. *Id.* The factors to be considered in evaluating the reasonable percentage to award class-

action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)).

The Court finds that Plaintiffs' Counsel's attorney's fees are fair and reasonable based on a consideration of those factors pertinent to this case. The time and labor required to prosecute the case were substantial. The case presented numerous difficult questions of fact and law which Plaintiffs' Counsel ably handled. Plaintiffs' Counsel are experienced in class action litigation and held in high esteem by their peers. They have shown significant skill, diligence and expertise in prosecuting and managing the litigation. The fee requested is customary in class actions, was wholly contingent on prevailing and well below both the benchmark in this Circuit and the percentage amounts in counsel's fee agreement with the Plaintiffs. The results obtained further support the fee requested; they are well

within the range of reasonableness. The case presented "thorny factual circumstances" and the risk of counsel receiving no fee in the event the Plaintiffs did not prevail. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001).

Two of the objectors, Desir and Barr, have objected to the attorney's fee award. For the reasons stated above, these objections are denied. They are conclusory, lack evidentiary support and fail to account for the considerations pertinent to settlements and attorney's fee awards. The 15% of the total settlement fund allocated to attorney's fees is well below the benchmark of 25% established by the circuit. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1190-91 (S.D. Fla. 2006) (rejecting as without merit objection that "essentially argues that, under the *Camden I* method of calculating attorneys' fees, the benchmark range in this case should be between six and ten percent.")

Based upon the foregoing,

IT IS ORDERED:

The parties' joint motion, ECF No. 409, for final approval of settlement on the terms set forth in the Settlement Agreement is **GRANTED**, and that the Court:

(a)   certifies the Settlement Classes described above, pursuant to Rule 23(a) and Rule 23(b)(2) and (3), Federal Rules of Civil Procedure, and designates and confirms the Plaintiffs as representatives of the Settlement Classes and John C. Davis, Law Office of John C. Davis, 623 Beard Street, Tallahassee, Florida 32303,

and Kent Spriggs, Spriggs Law Firm, 2007 W Randolph Circle, Tallahassee, Florida 32308, as Class Counsel;

(b) approves the Settlement Agreement, the terms of which are incorporated into this Order, as fair, adequate and reasonable;

(c) approves service awards to individual Settlement Class Representatives Jenny Cisneros, Dorothy Dunson-Thomas, Angela Ferreira, Shannel Gordon, Joy Jackson, Keysha Pinkney and Djuna Robinson in the amount of $10,000 per Settlement Class Representative;

(d) awards Class Counsel attorneys' fees and costs, including class settlement administration costs, in the amount of 15% of the Settlement Fund less payment of service awards to the above Settlement Class Representatives;

(e) directs Settlement Class Counsel, Plaintiffs, and the Department to implement and consummate the Settlement Agreement, according to its terms;

(f) denies all objections to the Settlement and any component thereof and to the award of attorney's fees;

(g) orders that Sabrina Nunez, Lizette Safille-Lemange, Carlos R. Munoz, Karla Vanessa Snell, Amber Griggs, Maritza Hernandez, Gladys Milena Gomez, Jocelyn McDaniel, Olga M. Maness, Annette Love, Ginger Baker Sanhueza and Montgomery Winningham are excluded from the Settlement Classes;

(h) retains continuing jurisdiction over Plaintiffs, the Settlement Classes, and the Department for the sole purpose of implementing, administering, consummating, and enforcing the Settlement Agreement and this Order of Final Approval of Settlement; and

(i) directs the Clerk to enter Final Judgment dismissing this action with prejudice as to the Department and all school districts named in the second amended complaint, whether or not the claims against some of those school districts previously were dismissed without prejudice. In accordance with the Settlement Agreement, all Plaintiffs and all Settlement Class members are bound by this Final Judgment.

SO ORDERED on March 21, 2020.

                                          s/Robert L. Hinkle
                                          United States District Judge